LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034-1922
Attorney for Plaintiff
WBH:4166

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| CARL SLUKA,<br><br>          Plaintiff,<br><br>vs.<br><br>LANDAU UNIFORMS, INC., and John Does 1-50, inclusive, fictitiously named defendants, jointly, severally and in the alternative,<br><br>          Defendants. | HON. JOSEPH E. IRENAS<br><br>DOCKET NO. 04-CV-2987 JEI<br><br><br>**NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

TO:   John P. Shusted, Esq.        Jeff Weintraub, Esq.
       German, Gallagher & Murtagh   Weintraub, Stock & Grisham, P.C.
       Blason IV Ste 208           Suite 512 Renaissance Center
       513 S. Lenola Road          1715 Aaron Brenner Drive
       Moorestown, NJ 08057       Memphis, TN 38120

    PLEASE TAKE NOTICE that on Friday, June 3, 2005, William B. Hildebrand, Esq.,

attorney for the Plaintiff, Carl Sluka, shall move before the Honorable Judge Joseph E.

Irenas, U.S.D.J. Mitchell H. Cohen United States Court House, 1 John F. Gerry Plaza,

Camden, NJ for entry of an order of partial summary judgement in his favor.

    PLEASE TAKE FURTHER NOTICE that Plaintiff shall reply upon the brief,

L.Civ.R. 56.1 Statement of Undisputed Facts, and Affidavit of William B. Hildebrand, Esq.

submitted herewith.

PLEASE TAKE FURTHER NOTICE that a proposed form of Order is submitted

herewith.

PLEASE TAKE FURTHER NOTICE that Plaintiff hereby requests oral argument.

Law Offices of William B. Hildebrand L.L.C.


By:_____s/ William B. Hildebrand_____

Dated: 5/6/05                          William B. Hildebrand
LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034-1922
Attorney for Plaintiff
WBH:4166

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| CARL SLUKA,<br><br>           Plaintiff,<br><br>vs.<br><br>LANDAU UNIFORMS, INC., and John Does 1-50, inclusive, fictitiously named defendants, jointly, severally and in the alternative,<br><br>           Defendants. | HON. JOSEPH E. IRENAS<br><br>DOCKET NO.  04-CV-2987 JEI |

**ORDER**

This matter having been presented to the Court, and the Court having reviewed the

moving papers and any opposition, is hereby ORDERED that Plaintiff's Motion for Partial

Summary Judgment is GRANTED.

Judgment is hereby entered for Plaintiff, Carl Sluka and against Defendant, Landau

Uniforms, Inc. for $_____ plus pre-judgment interest of $_____ for a total of

$_____ on his claim for unpaid bonus payments for 2003.

In addition, Plaintiff, Carl Sluka is hereby awarded a statutory penalty of $_____

per day for the _____ days Landau failed to provide him with a COBRA notice, plus

attorney's fees and costs.

Plaintiff's attorney is hereby directed to submit an affidavit of fees and costs within

ten (10) days hereof.

SO ORDERED.

Dated:                                      _____
                                                                                       J.

LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034-1922
Attorney for Plaintiff
WBH:4166

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| CARL SLUKA, | |
|---|---|
| Plaintiff, | HON. JOSEPH E. IRENAS |
| vs. | DOCKET NO.  04-CV-2987 JEI |
| LANDAU UNIFORMS, INC., and John Does 1-50, inclusive, fictitiously named defendants, jointly, severally and in the alternative, | |
| Defendants. | |

## L. Civ. R. 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff hereby submits the following statement of Undisputed Material Facts in support of his Motion for Partial Summary Judgment:

1.  Defendant Landau Uniforms, Inc. ("Landau") is a corporation with an office and principal place of business at 8410 Sandidge Road, Olive Branch, MS 38654-0516.  Landau is in the business of selling and marketing uniforms to retail accounts.  (Defendant's Answer to Plaintiff's Amended Complaint, para.1; Defendant's Answer to Plaintiff's Interrogatories, para. 1).

2.  Plaintiff, Carl Sluka ("Sluka") is an individual who resides in Burlington, NJ.  Sluka is 58 years old (DOB: 6/29/46) and has background, training and experience in sales and marketing (Defendant's Answer to Plaintiff's Amended Complaint, Para. 3).

3.  From September 17, 2001 until October 21, 2003, Landau employed Plaintiff to work as a Territory Manager.   (Defendant's Answer to Plaintiff's Amended Complaint, Para. 4; Defendant's Answers to Plaintiff's Interrogatory, para 1).

4.   The terms and conditions of Sluka's employment are set forth in a written

"Employment Agreement" entered into by the parties on September 7, 2001.  Pursuant to the terms of that Agreement, Sluka agreed to work as Landau's Territory Manager, selling Landau's products and merchandise in certain designated territories.  In exchange, Landau agreed to pay Sluka an initial base salary of $60,000/year plus a commission of 1% on all net sales to accounts assigned to him plus a bonus of 2% of net sales from new customers generated by him, plus a 2% bonus on the year-over-year increase in net sales to accounts assigned to him.  (Employment Agreement).

5.  The Employment Agreement further provided that the salary portion of Sluka's compensation was to be paid weekly or bi-weekly, and the commission-based portion of his compensation would be paid monthly, on the 10th of each month for sales accruing the proceeding month.  The bonus portion of his compensation was to be paid at year end. There is no provision in the Agreement requiring Plaintiff to be employed at year end to qualify for the bonus portion of his compensation.  (Employment Agreement).

6.  The employment agreement also states that it "supersedes all previous agreements and may be modified only in writing, signed by both parties.  The Landau handbook is not intended as a contract and in no way supersedes this Employment Agreement".  The parties intended that the provisions of the Employment Agreement were binding and should be enforced to "the fullest extent permissible."  (Employment Agreement).

7.  During the course of Sluka's employment with Landau, the parties never entered into any express, written modifications of the terms or conditions of Sluka's Employment Agreement with Landau, and the terms and basis for Sluka's compensation never changed.

8.  Sluka received his first "2% net increase" bonus in January, 2002, after he had been working at Landau for only a few months.  He received another bonus in January, 2003.  However, he had never received an increase in sales he achieved in 2003 v. 2002. (Sluka's depo., pp. 97-100).

9.  At the time and termination of Sluka's  employment, Sluka was enrolled in a group health plan maintained by Landau.  Accordingly, upon the termination of Sluka's employment, Landau was required to provide him with notice of his right to elect continued coverage under Landau's Group Health Plan, pursuant to the terms and provisions of the "Consolidated Omnibus Budget Reconciliation Act," U.S.C. § 1161-1168 (COBRA).

10.  Landau failed to send him the required COBRA notice until December 10, 2004, 371 days late.

11.  Through September, 2002, Sluka had gross volume sales in the amount of $1.7 million.  Through September, 2003, Sluka had gross volume sales in the amount of $2.1 million.  Of the 2003 number, $243,000 represents sales to a "new" account (Supershoes). (Letter from Landau's counsel, 1/26/05).

By:_____s/ William B. Hildebrand_____

Dated: 5/6/05                                   William B. Hildebrand

Law Offices of William B. Hildebrand L.L.C.
By:   William B. Hildebrand
1040 Kings Highway North
Suite 601
Cherry Hill, NJ 08034
856-482-7100
Attorneys for Plaintiff

| CARL SLUKA,                                                                                                                              | HON. JOSEPH E. IRENAS              |
|------------------------------------------------------------------------------------------------------------------------------------------|------------------------------------|
|        Plaintiff,<br><br>vs.<br><br>LANDAU UNIFORMS, INC., and John Does 1-50, inclusive, fictitiously named defendants, jointly, severally and in the alternative,<br><br>       Defendants. | DOCKET NO.  04-CV-2987 JEI         |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Law Offices of William B. Hildebrand L.L.C.
1040 Kings Highway North
Suite 601
Cherry Hill, NJ 08034
856-482-7100
Attorneys for Plaintiff

On the Brief:
William B. Hildebrand

## <u>TABLE OF CONTENTS</u>

|                                                                                                                                                          | **Page** |
|----------------------------------------------------------------------------------------------------------------------------------------------------------|:----:|
| STATEMENT OF FACTS                                                                                                                                        | 1    |
| LEGAL ARGUMENT                                                                                                                                            | 3    |
|     I.  PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS BREACH OF CONTRACT CLAIM FOR UNPAID BONUS PAYMENTS                             | 3    |
|     II.  SLUKA IS ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIM FOR STATUTORY PENALTIES BASED ON LANDAU'S FAILURE TO PROVIDE HIM WITH A TIMELY COBRA NOTICE | 5 |
| CONCLUSION                                                                                                                                                |      |

## <u>TABLE OF AUTHORITIES</u>

                                                                      **Page**

<u>Black v. Aetna Ins. Co.</u>, 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995).........4

<u>DiSabatino v. DiSabatino Bros., Inc.</u>, 894 F. Supp. 810,
816 (D. Del. 1995)..................................................................................6, 7

<u>Fenner v. Favorite Brand Intl., Inc.</u>, 25 F. Supp. 2d 870, 875
(D. Ill. 1998)............................................................................................6

<u>Fox v. Law Offices of Shapiro & Kreisman</u>, 1998
U.S. Dist. LEXIS 5096 (E.D.Pa. 1998)..................................................6, 7

<u>Gaskell v. Harvard Co-op Society</u>, 3 F.3d 495, 496
(1st Cir. 1993)..........................................................................................5

<u>Henderson v. Herman</u>, 373 N.J. Super. 625, 638

(App. Div. 2004)....................................................................................3, 4

McPherson v. Employees' Pension Plan, 33 F.3d 253, 254
(3d Cir. 1994)........................................................................................7

Mlsna v. Unitel Communications, Inc. 41 F.3d 1124, 1129
(7th Cir. 1994)..................................................................................... 6

Mulford v. Computer Leasing, Inc., 334 N.J. Super. 385, 392
(Law Div. 1999)....................................................................................4

Phillips v. Riverside, Inc., 796 F. Supp. 403, 409 (D.Ark. 1992)..........6

Pitt v. Tyree Org. Ltd., 90 S.W.3d 244, 252
(Tenn. Ct. App. 2002).............................................................................4

Torres-Negron v. Ramallo Brothers Printing, Inc., 203
F. Supp. 2d 120 (D.P.R. 2002)...............................................................6

Underwood v. Fluor Daniel, Inc., 106 F.3d 394 (4th Cir. 1997)...........6


Warren v. Metro Government of Nashville, 955 S.W.2d 618,
623 (Tenn. Ct. App. 1997)......................................................................4


## RULES & STATUTES

_____**Page**

29 U.S.C. § 1132(c)(1).............................................................................6

29 U.S.C. § 1132(g)(1).............................................................................7

29 U.S.C. §§ 1161-1168 .......................................................................2, 5,

Tenn. Code Ann. § 47-50-112................................................................4


## STATEMENT OF FACTS

Defendant Landau Uniforms, Inc. ("Landau") is a corporation with an office and principal place of business at 8410 Sandidge Road, Olive Branch, MS 38654-0516. Landau

is in the business of selling and marketing uniforms to retail accounts. (Defendant's Answer to Plaintiff's Amended Complaint, para.1; Defendant's Answer to Plaintiff's Interrogatories, para. 1).

Plaintiff, Carl Sluka ("Sluka") is an individual who resides in Burlington, NJ. Sluka is 58 years old (DOB: 6/29/46) and has substantial training and experience in sales and marketing. (Defendant's Answer to Plaintiff's Amended Complaint, Para. 3; Sluka's resume).

From September 17, 2001 until October 21, 2003, Landau employed Plaintiff to work as a Territory Manager. (Defendant's Answer to Plaintiff's Amended Complaint, Para. 4; Defendant's Answers to Plaintiff's Interrogatory, para 1). The terms and conditions of Sluka's employment are set forth in a written "Employment Agreement" entered into on September 7, 2001. Pursuant to the terms of that Agreement, Sluka agreed to sell Landau's products and merchandise in certain designated territories. In exchange, Landau agreed to pay Sluka an initial base salary of $60,000/year plus a commission of 1% on all net sales to accounts assigned to him. In addition, Landau agreed to pay Sluka a bonus of 2% of net sales from new customers and a 2% bonus on the year-over-year increase in net sales in accounts assigned to him. The salary portion of Sluka's compensation was to be paid weekly or bi-weekly, and the commission-based portion of his compensation was to be paid monthly. The bonus portion of his compensation was to be paid at year end. Significantly, there is no provision in the Agreement requiring Plaintiff to be employed at year end to qualify for the bonus portion of his compensation. (See Employment Agreement).

The Agreement "supersedes all previous agreements and may be modified only in writing, signed by both parties." The provisions of the Agreement were binding and should be enforced to "the fullest extent permissible."

Sluka received his first "2% net increase" bonus in January, 2002, after he had been working at Landau for only a few months. He received another bonus in January, 2003. However, he never received a bonus for the increase in sales or new accounts he obtained in 2003. (Sluka's depo., pp. 97-106).

At the time and termination of Sluka's employment, Sluka was enrolled in a group health plan maintained by Landau. Accordingly, upon the termination of Sluka's employment, Landau was required to provide him with notice of his right to elect continued coverage under Landau's Group Health Plan, pursuant to the terms and provisions of the "Consolidated Omnibus Budget Reconciliation Act," U.S.C. § 1161-1168 ("COBRA").

Landau did not to send him the required COBRA notice upon the termination of his employment . Rather, they waited until December 10, 2004, well after the initiation of this litigation.



## **LEGAL ARGUMENT**
I.   PLAINTIFF IS ENTITLED TO SUMMARY
     JUDGMENT ON HIS BREACH OF
     CONTRACT CLAIM FOR UNPAID BONUS PAYMENTS

Under the express terms of his Employment Agreement with Landau, Sluka was

entitled to receive two (2) bonus payments: (a) 2% of the year-over-year increase in net sales on all accounts, and (b) 2% of net sales from new customers.  Landau paid Sluka this bonus for 2001 and 2002, but failed and refused to pay the bonus for 2003, his last year of employment.  Through September, 2003 (his last full month of employment), Sluka's year-over-year sales increase was $400,000.  In addition, Sluka had $243,000 of sales from a new account (Supershoes).    Therefore, Sluka is entitled to a $12,860 bonus for 2003, calculated as follows:

$$
\begin{array}{rr}
 & \$400,000 \\
\text{x} & \underline{\quad .02} \\
 & \$\ 8,000 \\
\\
 & \$243,000 \\
\text{x} & \underline{\quad\quad .02} \\
 & \$\ 4,860 \\
\text{TOTAL} = & \$\ 12,860
\end{array}
$$

This bonus payment was an integral part of Sluka's compensation, and Sluka relied on this payment in continuing to work for Landau.  Accordingly, Landau is now estopped by equitable principles from disclaiming this obligation.  Cf. <u>Henderson v. Herman</u>, 373 N.J. Super. 625, 638 (App. Div. 2004) (noting that "estoppel" is an equitable doctrine based on the fundamental duty of fair dealing imposed by the law, and is designed to prevent injustice by not permitting a party to repudiate a course of action upon which another party relied to their detriment).  See also <u>Mulford v. Computer Leasing, Inc.</u>, 334 N.J. Super. 385, 392 (Law Div. 1999) (since employee clearly relied on corporate officer's promises as to his compensation in continuing to be employed by corporation and producing sales for it, fact that employee was terminated could not adversely affect his right to commissions earned).

Furthermore, enforcing the contract *as written* is consistent with well-established principles of Tennessee law.  Under Tennessee law, "all contracts ... shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written."  <u>Tenn. Code Ann.</u> § 47-50-112.  When construing contracts, courts are "to give effect to the expressed intention of the parties by construing the [contract] fairly and reasonably and by giving the [contract's] language its common and ordinary meaning."  <u>Black v. Aetna Ins. Co.</u>, 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995) (citations omitted).  When the language of a contract is unambiguous, a court must "interpret it as written rather than according to the unexpressed intention of one of the parties."  <u>Pitt v. Tyree Org. Ltd.</u>, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002).  Courts are "precluded from making new contracts for the parties by adding or deleting provisions," <u>Warren v. Metro Government of Nashville</u>, 955 S.W.2d 618, 623 (Tenn. Ct. App. 1997), and may "only enforce the contract which the parties themselves have made."  <u>Pitt</u>, 90 S.W.3d at 252.

Here, Landau seeks to  avoid its obligation to pay the above-referenced bonuses by adding a "continued employment" requirement that is plainly not contained in the agreement.  Such an after-the-fact "rewriting" of the contract is clearly not permitted by Tennessee or

New Jersey law.  Rather, this court should enforce the agreement *as written*.  Under the unambiguous terms of the Employment Agreement, Sluka is clearly entitled to a $12,860 bonus on account of his increase in sales and new accounts in 2003.  Therefore, the Court should enter summary judgment in his favor on this aspect of his claim.

     II.     SLUKA IS ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIM FOR STATUTORY PENALTIES BASED ON LANDAU'S FAILURE TO PROVIDE HIM WITH A TIMELY COBRA NOTICE

The "Consolidated Omnibus Budget Reconciliation Act," 29 U.S.C. §§ 1161-1168 ("COBRA") requires an employer to provide an employee with the option of electing continued coverage under the employer's health plan after the occurrence of a "qualifying event" which would otherwise end the employee's health insurance coverage.  29 U.S.C. § 1161; see Gaskell v. Harvard Co-op Society, 3 F.3d 495, 496 (1st Cir. 1993).  Among the "qualifying events" named in the statute is the termination of employment.  29 U.S.C. § 1163(2).  In the event of a covered employee's termination, an employer must notify the health plan's group administrator within thirty days.  29 U.S.C. § 1166(a)(2).  The administrator then has fourteen days to notify the employee of his/her right to continued coverage.  29 U.S.C. § 1166(a)(4)(c).

The compulsory character of COBRA's notification requirement has been repeatedly upheld by federal courts, even where the employee had personal knowledge of his/her COBRA rights.  See, e.g., Mlsna v. Unitel Communications, Inc. 41 F.3d 1124, 1129 (7th Cir. 1994) ("An employee's knowledge of his COBRA rights does not relieve the plan administrator of its notification duties. ...  Because the statute does not make the duty to notify dependent upon an employee's knowledge, it cannot be used to infer what he would

have done had he received the required notice.") <u>Phillips v. Riverside, Inc.</u>, 796 F. Supp.

403, 409 (D.Ark. 1992) (noting that "[Plaintiff's] personal knowledge of [her] COBRA

rights ... does not nullify the administrator's statutory duty to give notice upon termination.")

      Here, it is undisputed that Landau failed to provide Sluka with the required COBRA

notice upon the termination of his employment.

      Under section 502(c)(1) of the Employment Retirement Income Security Act of 1974

("ERISA"), a penalty of up to $110 per day may be assessed for failure to provide

a COBRA notice.  29 U.S.C. § 1132(c)(1).  The majority of the courts that have addressed

the issue have not required plaintiffs to show prejudice as a precondition to a monetary

award under section 502.  See, e.g., <u>Underwood v. Fluor Daniel, Inc.</u>, 106 F.3d 394 (4th Cir.

1997);  <u>Torres-Negron v. Ramallo Brothers Printing, Inc.</u>, 203 F. Supp. 2d 120 (D.P.R.

2002);  <u>Fenner v. Favorite Brand Intl., Inc.</u>, 25 F. Supp. 2d 870, 875 (D. Ill. 1998); <u>Fox v.

Law Offices of Shapiro & Kreisman</u>, 1998 U.S. Dist. LEXIS 5096 (E.D.Pa. 1998);

<u>DiSabatino v. DiSabatino Bros., Inc.</u>, 894 F. Supp. 810, 816 (D. Del. 1995).

      In <u>Fox</u>, the court noted that it was "clear" that it could assess a statutory penalty

"even if the plaintiff has not demonstrated any prejudice because the purpose of §1132 was

to punish benefit plan administrators for failure to comply with their statutory obligations."

<u>Fox</u>, <u>supra</u>, 1998 U.S. Dist LEXIS at 30-31.

      The monetary penalty runs from the date of the failure (*i.e.,* 44 days after the date of

the "qualifying event") until the date of correction.  <u>DiSabatino</u>, <u>supra</u>, 894 F. Supp. at 817.

Here, Landau provided Sluka with the required COBRA notice on December 10, 2004, 417

days after the termination of his employment (2004 was a leap year).  Therefore, Landau's notice was 373 days late, and statutory penalties should be awarded accordingly.

Pursuant to 29 U.S.C. § 1132(g)(1), the court, in its discretion, may award reasonable attorney's fees and costs to either party in an ERISA action.  The Third Circuit has adopted a five-part test to guide district courts in determining whether an attorney's fee award is appropriate.  McPherson v. Employees' Pension Plan, 33 F.3d 253, 254 (3d Cir. 1994).  The five factors are:  (1) the offending party's culpability or bad faith; (2) the ability of the offending party to pay the fees; (3) the deterrent effect such an award would have on offending parties; (4) the benefit conferred on plan members as a whole; and (5) the relative merits of the parties' positions.

Regarding the first factor, the Third Circuit made clear in McPherson that no "bad faith" or ulterior motive need be shown.  Rather, all that is required is some sort of "culpable" or "blameable" conduct.  McPherson, supra, 33 F.3d at 257.  Here, Landau clearly failed to comply with its statutory obligations, and did so only after being advised of their dereliction by Sluka's attorney.

Second, Landau cannot reasonably contend that it does not have the assets to pay an attorney's fee award.  Third, an award of attorney's fees would have a significant deterrent effect on Landau, encouraging them to avoid similar infractions in the future. Fourth, other plan members should benefit indirectly via the deterrent effect of an attorney's fee award. Fifth, Landau has offered no excuse for its clear failure to comply with its statutory obligations.  For all these reasons, an assessment of attorney's fees and costs against Landau

is appropriate.

## CONCLUSION

Sluka's entitlement to judgment on his claims for the unpaid 2003 bonus and

statutory penalties, attorney's fees and costs under ERISA is clear.  For these and the other

reasons stated herein, Plaintiff, Carl Sluka respectfully requests that his Motion for Partial

Summary Judgment be granted.


Dated:                                                     s/ William B. Hildebrand
                                                         William B. Hildebrand
LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034-1922
Attorney for Plaintiff
WBH:4166

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| CARL SLUKA,<br><br>                Plaintiff,<br><br>vs.<br><br>LANDAU UNIFORMS, INC., and John Does 1-50, inclusive, fictitiously named defendants, jointly, severally and in the alternative,<br><br>                Defendants. | HON. JOSEPH E. IRENAS<br><br>DOCKET NO.  04-CV-2987 JEI<br><br><br>**AFFIDAVIT OF WILLIAM B. HILDEBRAND, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

STATE OF NEW JERSEY

SS:

COUNTY OF CAMDEN

I, William B. Hildebrand, Esq. being of full age, and duly sworn according to law, upon my oath, hereby depose and say:

1.      I am an attorney at law of the State of New Jersey and counsel for the Plaintiff, Carl Sluka in this case.  As such, I am fully familiar with the facts set forth herein and submit this Affidavit in support of Plaintiff's motion for partial summary judgment.

2.      Attached hereto are true copies of the following documents:

A.      Plaintiff's Amended Complaint.
B.      Defendant's Answer to Plaintiff's Amended Complaint.
C.      Pertinent Excerpts from Defendant's Answer to Plaintiff's Interrogatories.
D.      Employment Agreement between Carl Sluka and Landau Uniform Inc.
E.      Pertinent Excerpts from Plaintiff's Deposition.
F.      Pertinent Excerpts from Defendant's Counsel's 1/26/05 correspondence.
G.      Plaintiff's counsel's 11/30/04 correspondence.
H.      Landau's 12/10/04 COBRA notification letter.


                                                __s/ William B. Hildebrand_____
                                                William B. Hildebrand


Sworn to and subscribed
before me this _____
day of_____, 2005.


_____
Notary Public

LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034-1922
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CAMDEN DIVISION

| | |
|---|---|
| CARL SLUKA,<br><br>        Plaintiff,<br><br>vs.<br><br>LANDAU UNIFORMS, INC., and John<br>Does 1-50, inclusive, fictitiously named<br>defendants, jointly, severally and in the<br>alternative,<br><br>        Defendants. |  HON. JOSEPH E. IRENAS<br><br>DOCKET NO.  04-CV-2987 JEI |

## AMENDED COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, Carl Sluka, residing at 907 Salem Road, Burlington, NJ, 08016 by way of Complaint against the Defendants says:

1.  Defendant, Landau Uniforms, Inc. ("Landau") is an entity created and/or existing pursuant to the laws of the State of Mississippi, with an office and principle place of business located at 8410 Sandidge Road, Olive Branch, MS, 38654-0516.  Landau is in the business of selling and marketing uniforms to retail accounts (re-sellers). At all times relevant herein, Landau was Plaintiff's employer and, therefore, directly responsible for the wrongful actions described herein.

2.  Defendants, John Does 1-50 inclusive, are fictitious names for corporations, partnerships, individuals, joint ventures, associations, or the identities of which are currently unknown but will be named, who were directly responsible for or conspired with their co-Defendants in the wrongful acts described herein.

3.  Plaintiff, Carl Sluka is an individual residing in Burlington, **EXHIBIT A**

Burlington County, NJ.  Plaintiff has extensive background, training and experience in sales and marketing.

4.  On or about August 31, 2001, Landau employed Plaintiff to work as a territorial manager for Pennsylvania, New Jersey, Maryland, and Delaware.  The terms and conditions of Plaintiff's employment are set forth in a written contract, a copy of which is attached as Exhibit "A", and an initial hire letter, a copy of which is attached as Exhibit "B".  Pursuant to the terms of these documents, Plaintiff agreed to work as Landau's territorial manager. In exchange, Landau agreed to pay Plaintiff a salary plus commissions and provide him with other benefits.

5.  Plaintiff diligently performed his duties and responsibilities under the aforesaid employment agreement with Landau, generating substantial sales, contracts and business for the company.  In addition, Plaintiff's sales performance improved over the years.  As a result, the additional geographic areas of New York City's five boroughs and Long Island were added to Plaintiff's territory in January, 2003.  In addition, during December 2002 - January 2003, Plaintiff was directed to fill-in as assigned for the New England territory open position.  These actions reflect Plaintiff's exceptional performance skills, above and beyond the normal job requirements.

6.  In addition, the company emphasized at sales meetings the importance of obtaining new accounts outside the normal channel of distribution.  Plaintiff was one of the few salesmen who achieved this result.  In fact, Plaintiff's establishment of a

new channel of distribution account was highlighted as a significant accomplishment at the August, 2003 group Landau headquarters sales meeting.  At this meeting, Landau verbally added to the bonus structure, stating that major financial weight would be given to obtaining new accounts outside of Landau's current channel of distribution.  Out of the 16 salesmen present, Plaintiff was one of only two salesmen who met this goal.  Plaintiff added 20 new accounts, one other salesman added one new account, and the other 14 salesmen added none.

7.   As of September, 2003, Plaintiff's dollar sales for the year were up approximately 5% over the preceding year and his monthly sales were up 10 % over the previous month.  Based on his year-to-date performance, Plaintiff reasonably expected a year-end  bonus of approximately $30,000.00, which was due to be paid in January, 2004.

8.  On October 21, 2003, Darryl Williams, Landau's Vice President of Sales & Marketing, met with Plaintiff at the Hampton Inn in Philadelphia, PA.  During that meeting, Mr. Williams provided Plaintiff with a copy of a proposed Separation Agreement for his review.  This action came as a surprise, because up to that time, Plaintiff had received no written or oral criticism of his sales performance, and his year-end performance review was satisfactory.  Pursuant to the terms of the Separation Agreement, Landau agreed to pay Plaintiff $9,693.83 in severance pay, comprised of the following: two (2) weeks of severance pay in lieu of notice; and four

(4) weeks of pay for accrued, unused vacation.  In exchange, Plaintiff was to provide Landau with a General Release of Claims.   A true and copy of the proposed Agreement is attached, marked Exhibit "C".   Significantly, the Agreement mentions nothing about cause or misconduct justifying dismissal, but does specifically mention age discrimination.

9.  On or about October 23, 2003, Plaintiff, through his attorney, rejected the proposed Agreement as grossly inadequate.

10.  Landau did not send Plaintiff any further formal notice regarding the status of his employment. However, Landau has failed and refused to comply with its duties and obligations under the Agreement.  Specifically, Landau has failed to pay Plaintiff commissions since October, 2003, and failed to pay him for accrued vacation pay or his year-end bonus.

11.  Defendant's actions, as described aforesaid, have caused Plaintiff severe economic and non-economic harm and damages, emotional strain, and loss of a new account base Plaintiff obtained and developed, all to his great financial detriment and loss.

### FIRST COUNT

12.  Plaintiff hereby incorporates by reference paragraphs 1-11 above, as fully as though the same were here set forth at length.

13.  Landau's actions, as described aforesaid, constitute a material breach of

the Employment Agreement between the parties.

14. As a direct and proximate result of Landau's breach of the Employment Agreement, Plaintiff has been deprived of duly-earned commissions, and suffered other economic and non-economic losses.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, or in the alternative, for damages, costs, interest, and such other relief as this Court deems just and proper.

## SECOND COUNT

15. Plaintiff hereby incorporates by reference paragraphs 1-14 above, as fully as through the same were here set forth at length.

16. All contracts, including employment contracts, contain an implied covenant"good faith and fair dealing".

17. Defendant's actions, as described above, constitute a material breach of the implied covenant of "good faith and fair dealing" inherent in the parties employment agreement, and entitling Plaintiff to recover damages for all losses proximately resulting therefrom.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, or in the alternative, for damages, costs, interest, and such other relief as this Court deems just and proper.

## THIRD COUNT

18.  Plaintiff hereby incorporates by reference Paragraphs 1-17 above, as fully as though the same were here set forth at length.

19.  New Jersey's Wage Payment Law, N.J.S.A. 34:11-4.1 et. seq. requires that every employer pay the full amount wages due its employees at least twice during the calendar month on regular pay days designated in advance.  "Wages" are defined as the direct monetary compensation for labor or services rendered by an employee, regardless of whether the amount is determined on a task, piece or commission basis. (N.J.S.A. 34:4.1 (c)).

20.  Whenever an employer is terminated or suspended, the affected employee must be paid all wages due no later than the regular pay day for the pay period during which the termination or cessation of employment takes place. Employees who are compensated in full or in part based on an incentive system, must be paid a reasonable approximation of the total wages due until the exact amounts can be calculated.

21.  New Jersey's Wage Payment Law Statute imposes personal liability and the managing officers of the corporation by deeming them to be the employers of the employees of the corporation.  N.J.S.A. 34:11-4.1.  Furthermore the statute permits a private right of action against the employer and its managing officers for wages and bonuses not paid as provided therein.

22.  Defendant failed and refused to pay Plaintiff the wages, bonuses, and

commissions he was entitled to receive upon the termination of his employment.

23.  As a direct and proximate result of Defendant's actions, as described above, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, costs, interest, reasonable attorney's fees, together with such other relief as this Court deems just and proper.

## **FOURTH COUNT**

24.  Plaintiff hereby incorporates by reference Paragraphs 1-23 above, as fully as though the same were here set forth at length.

25.  At the time of the termination of his employment, Plaintiff was 57 years old, and one of the oldest territory managers in the company.

26.  Darryl Williams previously terminated another employee, Chuck Quill, advising him that he thought he was "too old for" his job and that the company "needed somebody younger."  In addition, Darryl Williams made direct and veiled comments about Plaintiff's age and the company's desire to hire a new college graduate, all of which caused Plaintiff great emotional anxiety and distress.

27.  New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 et. seq. ("the LAD") protects employees who are discharged or otherwise subjected to unlawful discrimination on account of their age.

28.  Plaintiff's age (57) was a determinative factor in Defendant's decision to

terminate his employment.  At the time of his discharge, Plaintiff was performing at a superior level, higher then other similarly situated employees, and there were no other legitimate non-discriminatory reasons for his discharge.  Furthermore, Plaintiff was replaced by an employee who was more than twenty years younger than Plaintiff, thereby giving rise to an inference of discrimination.

29.  Defendant's actions, as described aforesaid, were willful and wanton and taken with malicious intent, so as to justify the imposition of punitive damages.

30.  As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered great mental and emotional distress; anxiety and depression; psychological disturbance, mental anguish, and humiliation; a loss of earnings, and earnings capacity; a loss of benefits; familial disruptions; and the loss of the ordinary pleasures of everyday life, including the right to pursue the gainful occupation of his choice.

WHEREFORE, Plaintiff demands judgment against Defendant for:

(a) Such sums as will adequately compensate him for the damages he sustained including but not limited to, his loss of income, salary, commissions, and bonuses past, present, and future;

(b) Such sums as will adequately compensate him for his loss of benefits;

(c) Such sums as will adequately compensate him for the defamation of his professional standing, mental anguish, humiliation and emotional distress,

physical pain and illness and other losses caused by his discharge;

(d) Such sums as will adequately compensate Plaintiff for any other losses sustained as a result Defendant's age discrimination against him, together with costs of suit, and reasonable attorney's fees;

(e) Such punitive damages as the jury deems appropriate, given Defendants blatant discrimination against Plaintiff; and

(f) Such other relief as this Court deems just and proper.

## FIFTH COUNT

31. Plaintiff hereby incorporates by reference Paragraphs 1-30 above, as fully as though the same were here set forth at length.

32. Beginning in August, 2001, Landau employed Plaintiff to work as a Territorial Manager. In or around, October, 2003, Landau terminated Plaintiff's employment.

33. At the time and termination of Plaintiff's employment, Plaintiff and Plaintiff's family were enrolled in a group health plan maintained by Landau.

34. Upon the termination of Plaintiff's employment, Landau was required to provide him with proper notice of his right to elect continued coverage under Landau's Group Health Plan, pursuant to the terms and provisions of the "Consolidated Omnibus Budget Reconciliation Act," 29 U.S.C. § 1161-1168 ("COBRA"). However, Landau failed to do so.

35. As a direct and approximate result of this statutory violation, Plaintiff has been damaged.

36. Section 502 (c) of the Employment Retirement Income Security Act of 1974 ("ERISA") provides that a penalty of up to $110/per day may be assessed for failure to provide a COBRA notice. In addition, Section 502 (g) of ERISA gives the Court discretion to award reasonable attorney's fees and costs to a prevailing Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, costs, interest, statutory penalties and reasonable attorney's fees, together with such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all issues and claims set forth herein.

Law Offices of William B. Hildebrand L.L.C.

BY:_____s/ William B. Hildebrand_____
WILLIAM B. HILDEBRAND

## CERTIFICATE OF SERVICE

I hereby certify that on the  6th  day of May 2005, I served a copy of the foregoing

motion upon the following person(s) by:


_____Hand delivery;


__X__U.S. Mail (First Class/Postage Prepaid)


_____U.S. Mail (Certified/Return Receipt Requested)


TO:John P. Shusted, Esq.

German, Gallagher & Murtagh

Blason IV Ste 208

513 S. Lenola Road

Moorestown, NJ 08057


Jeff Weintraub, Esq.

Weintraub, Stock & Grisham, P.C.

Suite 512 Renaissance Center

1715 Aaron Brenner Drive

Memphis, TN 38120

_____s/ William B. Hildebrand_____

William B. Hildebrand