UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CARL SLUKA,

        Plaintiff,

    v.

LANDAU UNIFORMS, INC., and John
Does 1-50, inclusive,
fictitiously named defendants,
jointly, severally and in the
alternative,

        Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 04-02987
(JEI)

**OPINION**

**APPEARANCES:**

LAW OFFICES OF WILLIAM B. HILDEBRAND
BY: WILLIAM B. HILDEBRAND
1040 Kings Highway North
Suite 601
Cherry Hill, NJ 08034
    Counsel for Plaintiff

GERMAN, GALLAGHER & MURTAGH P.C.
BY: JOHN P. SHUSTED
Blason IV, Suite 208
513 Lenola Road
Moorestown, NJ 08057
    Counsel for Defendant Landau Uniforms, Inc.

**IRENAS**, Senior District Judge:

This action, removed from state court, stems from Defendant

Landau Uniforms, Inc.'s ("Landau") termination of Plaintiff Carl

Sluka's employment.  Landau is a Tennessee corporation with its principle place of business in Olive Branch, Mississippi, and Plaintiff is a citizen of the State of New Jersey.  This Court has subject matter jurisdiction over all counts under 28 U.S.C. § 1332. Although the Fifth Count asserts a federal cause of action, the removal petition was based solely of diversity of citizenship. Venue is proper under 18 U.S.C. 1391(a) and (c).[1]

Plaintiff's Complaint contains five counts: (I) material breach of the Employment Agreement; (II) material breach of the implied covenant of "good faith and fair dealing;" (III) violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq. ("NJ WPL"); (IV) age discrimination in violation of New

---

[1]The Employment Agreement at the center of this dispute contains a choice of law and a forum selection clause stating that the agreement "shall be construed under and enforced in accordance with the laws of the state of Tennessee and in the Courts of the State of Tennessee." Because Defendant has not moved to transfer the case to Tennessee under 28 U.S.C. § 1404(a) and neither party has raised the issue in this motion, the contractual forum selection clause will be deemed waived. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 n.8 (1988); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877-78 (3d Cir. 1993). Only the first two counts are state common law claims. Neither party has suggested that Tennessee law differs from New Jersey Law, and Plaintiff has specifically asserted in its brief that the relevant law of the two states is the same. (Plaintiff's Brief p. 4-5). Whether the Court does a choice of law analysis under *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), or considers the issue waived by the parties, the Court will apply New Jersey common law to the breach of contract issues raised in the first two counts. *See Woessner v. Air Liquide, Inc.,* 242 F.3d 469, 472 (3d Cir. 2001)(first step in New Jersey analysis is to determine if a conflict exists between the two states); *Montgomery Ward & Co. v. Pacific Indemnity Company,* 557 F.2d 51, 58 n. 11 (3d Cir. 1977)(ordinarily law of the forum applies if issue not raised by parties and there are no facts justifying a different choice).

Jersey's Law Against Discrimination, N.J.S.A 10:5-1 et seq. ("NJ LAD"); and (V) failure to provide Plaintiff with notice pursuant to Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 ("COBRA").  Both parties filed motions for summary judgment; each motion will be considered in turn.

Plaintiff seeks summary judgment on Count I, his breach of contract claim, and on Count V, his COBRA notice claim. Plaintiff claims that the express terms of his Employment Agreement entitle him to two year-end payments that Landau has failed to issue.  In addition, as to Count V, Plaintiff argues that he is entitled to statutory penalties, attorney's fees and costs based on Landau's untimely delivered COBRA notice.

Landau seeks summary judgment on all five counts.  Landau contends that Plaintiff was not entitled to the two "bonuses," under the Employment Agreement after he was fired, that he was paid his regular salary and that he was terminated for performance issues.  Finally, Landau argues that it should not be held liable for the late COBRA notice because there is no proof of damages.

The relevant portions of the Employment Agreement unambiguously classify the two year-end payments in question as compensation.  Plaintiff is entitled to all forms of compensation

3

duly earned prior to termination.  Therefore, summary judgment
will be granted for Plaintiff and denied for Defendant on Count
I.  Count II will be dismissed as moot because it mirrors Count
I.  Because the two payments are clearly incentive based, Landau
did not violate the NJ WPL, and accordingly, summary judgment in
favor of Defendant will be granted on Count III.

Summary judgment will be denied on Count IV, the NJ LAD
claim, because Plaintiff has raised issues of triable fact as to
the reasons why he was fired.  As to Count V, the COBRA claim,
summary judgment will be granted in favor of Plaintiff and
against Defendant.  A statutory penalty of twenty dollars per day
will be imposed.


I.

Landau is in the uniform business - marketing and selling
uniforms to retail accounts.  Plaintiff's training and experience
is in sales and marketing.  (Pl.'s Stmnt. of Facts at ¶ 2.)  On
August 31, 2001, Landau offered Plaintiff the position of
Territory Manager for Pennsylvania, New Jersey, Maryland and
Delaware. (Landau Letter, attached as "Exhibit D" in Supp. of
Pl.'s Mot. for Summ. J.)

A.

On September 7, 2001, Plaintiff and Landau entered into an
employment agreement for the Territory Manager position.
(Employmnt. Agrmnt., attached as "Exhibit D" in Supp. of Pl.'s
Mot. for Summ. J.)   Counts I, II, and III stem from disputes
over the interpretation of the Employment Agreement and the
nature of certain payments.  An attachment to the Employment
Agreement, provides the specific break down of Plaintiff's
compensation:

> Employee shall be compensated as follows:
> Initial Base Salary of $60,000 per year plus commission of
> 1% on all net sales to accounts assigned to Employee plus 2%
> commission on net sales from new customers generated by
> Employee, plus 2% commission on year over year increase in
> net sales to accounts assigned to Employee.

(Emplymnt Agrmnt. at Exhibit "A")

The text portion of the Employment Agreement explains the
timing of the various components of Plaintiff's compensation:

> Employee's compensation is detailed in Attachment A
> (attached hereto).  The salary portion of Employee's
> compensation will be paid weekly or bi-weekly. The
> commission-based portion will be paid monthly, on the
> 10th of each month for sales accruing the preceding
> month.  The bonus portion would be paid at year end.

(*Id.*)  Although not explicitly stated in the Employment
Agreement, the ordering of the components implies that the salary
portion refers to the Initial Base Salary, the commission-based

5

portion refers to the 1% on all net sales, and the bonus portion refers to the two 2% commission payments (2% net sales from new costumers and 2% year over year increase).[2]

The Employment Agreement specifically provides that Plaintiff was an at-will employee.  (*Id.*)  In addition, the Employment Agreement states that it "supersedes all previous agreements and may be modified only in writing, signed by both parties.  The Landau handbook is not intended as a contract and in no way supersedes this Employment Agreement."  (*Id.*)  Both parties signed the Employment Agreement.  It is undisputed that they both intended the provisions of the Employment Agreement to be binding and enforced to "the fullest extent permissible." (Pl.'s Stmnt. of Facts at ¶ 6.)


                                 B.

Plaintiff began working for Landau on September 17, 2001. (*Id.* at ¶ 3.)  There is some dispute as to Plaintiff's performance levels and work history.  In January, 2002, Plaintiff received his first "2% net increase" payment, after he had been working for only a few months.  (Sluka Dep. at 97-100.)  However,

---

[2] This interpretation is consistent with the letter offer from Ladau to Plaintiff.  While not part of the Employment Agreement, the letter offer provides a summary of the compensation package to which the parties later agreed.

according to Landau, Plaintiff was counseled for performance issues on February 8, 2002.  (Def.'s Answer to Interogg. at 4.)  Towards the end of 2002, and early 2003, Plaintiff took on a larger sales territory and received another year-end payment.  (Pl.'s Am. Compl. at ¶ 5.)  During December, 2002, and January, 2003, while Landau was seeking to find a permanent New England Territory Manager, Plaintiff was asked to fill-in as needed for the New England Territory.  (*Id.*)  In addition, New York's five boroughs and Long Island were added to Plaintiff's territory in January, 2003.  (*Id.*)

Landau states that Plaintiff was counseled for performance issues on March 27, 2003, and June 9, 2003.  (Def.'s Answer to Interogg. at 5.)  In June, 2003, Darryl Williams, Landau's Vice-President of Sales and Marketing, as well as Plaintiff's supervisor, received a complaint from one of Plaintiff's customers that the customer no longer wanted calls from Plaintiff.  (Williams Dep. at 35.)

Plaintiff contends that the importance of obtaining new accounts outside the normal channel of distribution was emphasized at a number of sales meetings; Plaintiff and one other salesmen (out of sixteen total) successfully accomplished this goal.  (Pl.'s Am. Compl. at ¶ 6.)  Plaintiff's accomplishment was

highlighted at the August, 2003, group Landau headquarters sales meeting.  (*Id.*)  Furthermore, Plaintiff states that his dollar sales for the year were up approximately 10% over the preceding year and his monthly sales were up 10% over the previous month as of September, 2003.  (*Id.* at ¶ 7.)

C.

Plaintiff was again counseled for performance issues on October 6, 2003.  (Def.'s Answer to Interogg. at 5.)  On October 21, 2003, Darryl Williams met with Plaintiff at the Hampton Inn in Philadelphia, PA.  (Pl.'s Am. Compl. at ¶ 8.)  Mr. Williams provided Plaintiff with a copy of a proposed Separation Agreement, including a severance pay offer.  (*Id.*)  The Separation Agreement does not mention cause or misconduct, but does reference age discrimination.  (*Id.*)  Through his attorney, Plaintiff rejected the proposed agreement on October 23, 2003. (*Id.* at ¶ 9.)

Plaintiff was terminated from employment on October 21, 2003.  (Def.'s Stmnt. of Facts at ¶ 10.)  Landau states that Plaintiff was terminated for poor performance; the specific reasons included: communication problems with fellow employees and customers, not following expected procedures, and because

"other than one new account added by Plaintiff, Plaintiff's sales were either flat or declining." (Def.'s Answer to Interogg. at 1.) These reasons are hotly contested by Plaintiff, who points out that according to Landau, "[t]hrough September, 2002, [Plaintiff] had gross volume sales in the amount of $1.7 million. Through September, 2003, [Plaintiff] had gross volumes sales of $2.1 million. Of the 2003 number, $243,000 represents sales to a 'new' account (Supershoes)." (Letter from Def.'s Counsel to Pl.'s Counsel, attached as "Exhibit F" in Supp. of Pl.'s Mot. for Summ. J.)

### D.

After Plaintiff's termination, Landau paid him his remaining initial base salary on October 24, 2003. (Austin Aff. at ¶ 7.) On November 12, 2003, Plaintiff was paid for his October, 2003, 1% net commissions. (*Id*. at ¶ 6.) It is not disputed that Plaintiff did not receive any payment for his year-over-year increase in sales Plaintiff achieved in 2003 versus 2002 or for the 2% net sales for his new customers in 2003. (Pl.'s Stmnt. of Facts at ¶ 8.) In early 2004, four months after Plaintiff was

terminated, Landau filled Plaintiff's former position with a forty-one year old man.[3]  (Def.'s Answer to Interrog. at 2.)

On May, 28, 2004, Plaintiff filed an action in the Superior Court of New Jersey, Burlington County.  Landau was served with the Complaint on June 7, 2004.  Later in June, 2004, Landau paid Plaintiff for vacation time he had accrued.[4]  (Austin Aff. at ¶ 8; *see also* Supplemental Aff. of Council "Exhibit A," attached in Supp. of Opp'n to Def.'s Mot. for Summ. J.)

At the time Plaintiff was terminated in October, 2003, he was enrolled in a group health plan maintained by Landau.  (Pl.'s Stmnt. of Facts at ¶ 9.)  It is undisputed that Landau did not send Plaintiff the COBRA notice until December 10, 2004.  (Austin Aff. at ¶ 11.)  Landau has acknowledged this oversight, and offered to make coverage retroactive.  (*Id*. at ¶ 12.)


II.

The test for summary judgment is stated in Rule 56 of the Federal Rules.  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and

---

[3] Plaintiff was born on June 29, 1946, and was fifty seven years old at the time of termination.
[4] Also in June, 2004, Landau removed the action from the Superior Court of New Jersey pursuant to 28 U.S.C § 1441, on the basis of diversity jurisdiction under 28 U.S.C § 1332.

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but. . . must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 248 (citation omitted).

III.

The issue in deciding summary judgment for Counts I and II is whether Plaintiff was entitled to both year-end payments (2% net year-over-year sales increase and 2% net sales from new

11

costumers).   Plaintiff asserts that the express terms of the
Employment Agreement do not mention any cause for denial of those
payments; specifically, the terms provide for payment at year-
end, but do not explicitly require that he must be working at
distribution time.   Landau contends that the payments are
"bonuses" and since Sluka was terminated prior to bonus
distribution, he is not entitled to them.   According to Landau,
unwritten company policies mandate that an employee must be
working at Landau at the time of bonus distribution and the
employee must have worked the full twelve months of the year in
order to receive a bonus.

A.

1.

The first step for this Court in interpreting the Employment
Agreement is to determine if it is ambiguous.   *U.S. v.
Pantelidis*, 335 F.3d 226, 235 (3d Cir. 2003).   "The determination
of whether a contract is ambiguous is a question of law."   *Id.*
The language in a contract is ambiguous if the words in the
contract are subject to two or more possible meanings.   *Cooper
River Plaza East, LLC v. Braid Group*, 359 N.J. Super. 518, 528
(App. Div. 2003).

12

When a contract is determined to be unambiguous, "the construction and effect of that agreement is a matter of law which must be resolved by the court and not the jury." *Cedar Ridge Trailer Sales, Inc. v. National Community Bank of New Jersey*, 312 N.J. Super. 51, 62-63 (App. Div. 1998).  The Court must enforce the unambiguous terms as written, and it has "no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument." *East Brunswick Sewerage Authority v. East Mill Associates, Inc.*, 365 N.J. Super. 120, 125 (App. Div. 2004).

In *East Brunswick Sewerage Authority*, a developer entered into an agreement to pay fifty-five percent of all costs associated with a construction project.  Other than two paragraphs concerning construction and permit costs "the agreement contained no other limiting or conditional language." *Id.*  The Superior Court of New Jersey, Appellate Division found the terms of the contract to be clear, and awarded damages amounting to fifty-five percent of the total costs.  *Id.* at 127.

2.

Although Landau argues that it has an unwritten policy to pay "bonuses" only if the employee is still working at the time

13

of distribution, the compensation portion of the Employment
Agreement is unambiguous and contains no such limitation.  In the
section of the Employment Agreement titled "Compensation," it
clearly states that Plaintiff's compensation is detailed in
Attachment A.  Attachment A explicitly lays out that Plaintiff
will be compensated with (1) an initial base salary, (2) 1%
commission on all net sales to his accounts, (3) 2% commission on
net sales from new customers, and (4) 2% commission on
Plaintiff's year-over-year increase in net sales.

Despite the Employment Agreements vague identification of
which payments are called "bonuses" and which are "commissions,"
it is absolutely clear that all four payments are compensation.
This Court accepts the premise that Landau calls the two percent
year-over-year increase and the two percent of new costumers
payments "bonuses."  The nomenclature for these two payments does
not change the fact that they are compensation for Plaintiff's
services already rendered.  There is absolutely no limiting or
conditional language in the Employment Agreement concerning
Plaintiff's compensation.  That Plaintiff was not an employee at
the time these payments were to be distributed is not relevant to
whether Plaintiff is entitled to compensation for services
already rendered.

14

The express terms of the Employment Agreement entitle Plaintiff to all four forms of his compensation.  Summary judgment will be granted for Plaintiff and denied for Defendant on Count I.[5]

B.

Since summary judgement is warranted as to Count I in favor of Plaintiff, any review of Count II, which alleges a breach of the implied covenant of good faith and fair dealing, would be duplicative.  Count II will be dismissed as moot.

IV.

In Count III, Plaintiff alleges that Landau violated the NJ WPL because it failed to pay him the year-end payments, referred to as "commission" in the Addendum to the Employment Agreement. Defendant contends that the payment in dispute is a bonus, to which the NJ WPL does not apply, as bonuses are not wages.[6]

---

[5] The record at present is devoid of the necessary evidence that would allow this Court to award a specific amount of damages.  The parties should notify the Court within thirty days if they can reach an agreement on the amount of damages due under Count I.  If, however, they cannot reach a consensus, the Court will consider what further proceedings are necessary.

[6] Defendant notes that it paid Plaintiff his "wages" - the regular initial base salary, vacation, and 1% commission through October, 2003.

The NJ WPL provides that "every employer shall pay the full amount of wages due to his employees."  N.J.S.A. 34:11-4.2. Wages are defined as:

> the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto.

N.J.S.A. 34:11-4.1.

The express terms in the Employment Agreement do not explicitly make it clear whether both of the year-end payments were "bonuses" or "commissions."  However, it is clear that the payments in question are incentive based.  The two percent commission based on new costumers is designed to motivate and reward a salesperson who seeks out and creates new clients. Similarly, the two percent year-over-year increase payment is aimed to motivate and reward a salesperson who creates more business each year.

"Supplementary incentives" are the types of payments that, by definition, are not included under the NJ WPL.  Therefore, summary judgment on Count III will be granted in favor of Defendant.

16

VI.

In Count IV, Plaintiff alleges discriminatory termination in violation of the NJ LAD.

A.

The Supreme Court of New Jersey established that in a case where an employee is alleging discriminatory discharge the proper analysis is to first determine if the plaintiff has made out a prima facie case. *Clowes v. Terminix Intern., Inc.*, 109 N.J. 575, 596-7 (1988). The elements of a "prima facie case on a termination claim" require Plaintiff to show by a "preponderance of the evidence that []he (1) belongs to a protected class, (2) was performing in the position from which []he was terminated, (3) nevertheless was fired, and (4) the employer sought someone to perform the same work after []he left." *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 457-58 (2005) (citations omitted). These elements serve "essentially a gatekeeping function." *Id.*

1.

It is undisputed that Plaintiff was fifty-seven years old at the time of termination, and therefore is a member of a protected class so as to satisfy the first element of a prima facie case.

17

2.

At the prima facie stage "even if a plaintiff candidly acknowledges, on his own case, that some performance issues have arisen, so long as he adduces evidence that he has, in fact, performed in the position up to the time of termination, the slight burden of the second prong is satisfied." *Zive*, 182 N.J. at 455.  The New Jersey Supreme Court stated that "[a]ll that is necessary is that the plaintiff produce evidence showing that she was actually performing the job prior to the termination." *Id*. at 454.

Plaintiff has proffered evidence in the form of raw sales numbers and expanded areas of responsibility to suggest that he was performing his job adequately prior to termination.  In addition to his raw sales numbers, he demonstrated his ability to obtain new accounts outside the normal channel of distribution.

A rational jury could find that Plaintiff's performance was adequate and that he was qualified for the position that he held. Plaintiff has produced sufficient evidence to satisfy the second element of a prima facie case.

3.

It is undisputed that Sluka was terminated from employment; thus Plaintiff has demonstrated the third element of a prima facie case.

4.

It is undisputed that Landau sought a replacement for Sluka, and that four months after his termination a younger employee was hired as his replacement.  Therefore, Plaintiff has established all four elements of a prima facie case for his claim of discriminatory termination.

B.

"Once the prima facie case has been established, the *McDonnell Douglas* [burden shifting] analysis is followed in all other respects." *Clowes,* 109 N.J. at 597.  When a plaintiff establishes a prima facie case, "the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against her and the burden shifts to the employer 'to articulate some legitimate, nondiscriminatory reason for the employee's [termination].'" *Parker v. Hanhemann University Hosp.*, 234 F. Supp. 2d 478, 488 (D.N.J. 2002) (citations omitted).

In *Zive*, the court stated, "if the employer proffers a non-discriminatory reason, plaintiff does not qualify for a jury trial unless he or she can 'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Zive,* 182 N.J. at 455-56 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994)).

Landau has articulated a non-discriminatory reason for Sluka's termination - poor communication skills and sales performance.  However, Plaintiff has produced sufficient evidence to suggest that his sales performance was more than adequate. Based on the evidence, a rational jury could reasonably disbelieve Landau's proffered legitimate reason.[7]  Therefore, Landau's Motion for Summary Judgment on Count IV will be denied.

## VII.

In Count V, Plaintiff requests monetary penalties for Landau's undisputed failure to provide Plaintiff with the

---

[7] Plaintiff, alternatively, argues that Landau's articulated non-discriminatory reason is pretext.  He references comments made by supervisors about employees' ages.  Since we conclude that a reasonable jury could disbelieve Landau's rationale, it is not necessary to address Plaintiff's alternate basis at this time.

required COBRA notice upon the termination of his employment.  In addition to the statutory penalties, Plaintiff seeks attorney's fees and costs associated with his COBRA claim.

Landau argues that because there is no evidence of any bad faith or malice on its part, monetary penalties should not be imposed.  Landau acknowledges that this Court *can* assess penalties, but argues that the Court should decline to impose any penalties here.

A.

COBRA, 29 U.S.C. § 1161, states that "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." Termination is listed as a "qualifying event" under 29 U.S.C. § 1163.

Any administrator "who fails to meet the requirements" of § 1161 "with respect to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure."  29 U.S.C. § 1132.

A district court has considerable discretion to impose a penalty on a company that fails to comply with the notice provisions of ERISA or the COBRA amendments.  Several cases demonstrate the breadth of this discretion.  The Fourth Circuit Court of Appeals stated in an unpublished opinion that when a violation is "clear and without excuse, a penalty should be imposed, regardless of whether the plaintiff has been prejudiced." *Underwood v. Fluor Daniel, Inc.*, No. 95-3036, 1997 WL 33123 (4th Cir. Jan. 28, 1997).  The court reasoned that in order for justice to be served with equal force to all, prejudice should not be a prerequisite to imposing the statutory penalty. In *Underwood*, the court imposed the maximum penalty of $100 per day on a company that failed to provide COBRA notice, despite the fact that the plaintiff's knew about their eligibility independent of the defendant's required notice.

Similarly, in *Torres-Negron v. Ramallo Bros. Printing, Inc.*, a statutory penalty of $45 per day was awarded to the plaintiff when the defendant company failed to provide COBRA notice for 271 days and the company issued notice only after the plaintiff filed a lawsuit.  203 F. Supp. 2d 120 (D. Puerto Rico 2002).  The court was not influenced by the fact that the plaintiff's former duties included the distribution of COBRA notices because "[w]hether or

not [the plaintiff] had knowledge of her rights under COBRA is irrelevant." *Id.* at 125.

Furthermore, in *Fenner v. Favorite Brand Intern., Inc.*, the court recognized that "proof of injury or prejudice is not a prerequisite to a claim under section 1132(c)." 25 F. Supp. 2d 870 (N.D. Ill. 1998); *see also Davis v. Featherstone*, 97 F.3d 734, 738 (4th Cir. 1996); *Bartling v. Fruehauf Corp.*, 29 F.3d 1062 (6th Cir. 1994*); Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir. 1994); *Rodriguez-Abreu v. Chase Manhattan Bank*, *N.A.*, 986 F.2d 580, 588 (1st Cir. 1993); *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993); *Godwin v. Sun Life Assurance Co. of Canada*, 980 F.2d 323, 327 (5th Cir. 1992); *Pagovich v. Moskowitz*, 865 F. Supp. 130, 137 (S.D.N.Y. 1994).

It is also within the court's discretion to not impose penalties. In *Rodriguez-Abreu*, the district court decided to not assess penalties for untimely delivered COBRA notice, and was upheld by the Second Circuit. 986 F.2d 580. The district court declined to impose penalties "on the grounds that '[plaintiff] has failed to show that his rights were harmed or otherwise prejudiced by the delay in his receipt of the information and has not demonstrated bad faith or intentional delay on the part of the defendant.'" *Id.* at 588 (citation omitted). The Second

Circuit held that the district court did not abuse its discretion because "[a]lthough prejudice and bad faith are not prerequisites for imposition of penalties, these are factors which the district court properly considered in exercising its discretion not to impose penalties." *Id.*

Similarly, in *Boucher v. Williams*, 13 F. Supp. 2d 84 (D. Me. 1998), the District of Maine opted not to assess penalties because there was no proof of damages, bad faith or need for deterrence.

B.

A prevailing party on a claim for statutory penalties also may be awarded "a reasonable attorney's fee and costs of action" as provided by 29 U.S.C. § 1132(g)(1).  Because the statute provides little guidance for determination of whether to award fees and costs the Third Circuit articulated five factors that must be considered: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position.  *McPherson v.*

24

*Employees' Pension Plan of American Re-Insurance Company, Inc.*,
33 F.3d 253, 254 (3d Cir. 1994).

C.

In this case, there is no dispute that Landau failed to
notify Sluka of his right to elect continued coverage from the
day he was terminated, October 21, 2003, until December 10, 2004.
In addition there is no dispute as to the law that the Court may,
in its discretion, impose a penalty of up to one hundred dollars
per day.  As to Count V, Plaintiff's Motion for Summary Judgment
will be granted and Defendant's Motion for Summary Judgment will
be denied.  A statutory penalty of twenty dollars per day will be
awarded for every day Defendant was in violation of its COBRA
requirements.[8]  Plaintiff's request for attorney fees and costs
will be granted, but any determination of a specific amount will
be deferred until trial.

---

[8] In exercising our discretion, we have balanced the lack of malice or bad
faith on Defendant's part with the need for compliance with COBRA's
requirements.  Landau has the resources and ability to follow important
federal regulations, and should be held to its obligations.  Since its
omission appears to be an honest error, and Landau has offered to make
Plaintiff whole by making coverage retroactive, we will not impose the maximum
penalty.

25

IV.

For the reasons set forth above, the Court will deny in part and grant in part Defendant's Motion for Summary Judgment.  In addition, we will grant Plaintiff's Motion for Summary Judgment in its entirety.  The Court will issue an appropriate Order.


Date: <u>August 15, 2005</u>


<u>s/*Joseph E. Irenas*</u>
Joseph E. Irenas, S.U.S.D.J.

26